IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES SYNNOTT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 16 C 9098 |
| ) | |
| PAUL BURGERMEISTER, IAN NORTHRUP, ) | |
| and SHERIFF OF DUPAGE COUNTY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

After rejecting the remittitur of an earlier jury award of compensatory and punitive damages, pro se plaintiff James Synnott proceeded to a second trial limited to the question of damages, and a jury awarded him $85,000 in punitive damages and no compensatory damages. Defendants Paul Burgermeister and Ian Northrup have moved for a new trial under Federal Rule of Civil Procedure 59 or alternatively for remittitur of the punitive damages. For the reasons stated below, the Court denies the motion.

### Background

In September 2016, Synnott sued a number of parties based on events arising from his divorce and child custody proceedings. The Court dismissed all of his claims except for certain claims against Burgermeister and Northrup, two DuPage County Sheriff's deputies. Synnott alleged that the deputies had violated the Fourth Amendment when they entered his home on January 2, 2016 after a process server had been unable to serve legal papers on him. He sued the defendants and the Sheriff for

damages under 42 U.S.C. § 1983.

The case proceeded to trial in April 2019. The jury held both defendants liable for unlawfully entering Synnott's home and failing to knock and announce their presence. The jury also found that Northrup used excessive force against Synnott by pointing his gun at Synnott without justification. The jury awarded him $250,000 in compensatory damages and punitive damages of $70,000 against Northrup and $30,000 against Burgermeister. Dkt. no. 123.

The Court denied the defendants' motion for entry of judgment in their favor as well as their alternative request to eliminate or reduce the award of punitive damages. On the defendants' motion for new trial, the Court concluded that the evidence did not support a compensatory damages award of $250,000 and ordered a new trial on damages unless Synnott accepted a remittitur of the compensatory damages award to $125,000 (the Court overruled the request for a remittitur of the punitive damages award). Dkt. no. 169. Synnott declined to accept the remittitur, so the case went to a retrial of the issue of compensatory and punitive damages, which took place in April 2021. The jury declined to award compensatory damages, and it awarded punitive damages of $75,000 against Northrup and $10,000 against Burgermeister. Dkt. no. 252.

### Discussion

In their motion for new trial, the defendants argue that a new trial is warranted because the punitive damages award was against the manifest weight of the evidence and that even if not, the award was unconstitutionally excessive. The defendants also cite various other issues in support of their motion. The Court will address each

2

argument in turn.

A.  **New trial on punitive damages**

The defendants argue that the jury's award of punitive damages was against the manifest weight of the evidence. More specifically, they contend that there was no evidence that they "tried to hurt [Synnott], or that they harbored ill will or spite against him." Defs.' Mot. for New Trial at 3. Accordingly, Burgermeister and Northrup contend that their conduct did not meet the standard for punitive damages.

A jury may award punitive damages in an action under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, *or* when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983) (emphasis added). A court can order a new trial "if the jury's verdict is against the manifest weight of the evidence." *Venson v. Altamirano*, 749 F.3d 641, 656 (7th Cir. 2014). A verdict is against the manifest weight of the evidence "only if 'no rational jury' could have rendered the verdict." *Moore ex rel. Estate of Grady v. Tuelja*, 546 F.3d 423, 427 (7th Cir. 2008); *see also, e.g., Marcus & Millichap Inv. Servs. of Chi., Inc. v. Sekulovski*, 639 F.3d 301, 313–14 (7th Cir. 2011). "In passing on a motion for a new trial, the district court has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Mejia v. Cook County*, 650 F.3d 631, 633 (7th Cir. 2011).

One problem with the defendants' argument is that it disregards that a jury may impose punitive damages when it finds the defendants' conduct to involve reckless or callous indifference to the plaintiff's rights. *Smith*, 461 U.S. at 56. Defendants note that

3

reckless conduct "reflects complete indifference to the person's rights." Defs.' Mot. for New Trial at 3. There is nothing in the least bit inconsistent between a finding of complete indifference to Synnott's rights and the defendants' assertions defending their conduct: they had never previously met Synnott, their actions forced the process server to leave the area, and they did not physically harm Synnott. In other words, Burgermeister and Northrup's support for their argument does not directly address the conduct where they acted with complete indifference.

Moreover, there was ample support in the evidence for Synnott's request for punitive damages. The parties presented conflicting evidence regarding what transpired before and after the deputies entered the home. Synnott and his sisters all testified that the front door to the house was closed and that the deputies entered the house without knocking at the door, ringing the doorbell, announcing who they were, or anyone letting them inside the home. The deputies gave a different version, but the jury was not required to believe them. The parties likewise presented conflicting evidence regarding the deputies' use of their firearms. Both Synnott and his sister testified that the deputies pointed their guns at him during the encounter. The jury was entitled to believe this testimony even though the deputies rendered a different version of the events.

The bottom line is that the evidence supported a finding that the deputies entered Synnott's home through a closed door for no legally viable reason; were certainly aware that they could not properly enter his home without a warrant or some other proper basis; and that they simply didn't care—in other words, they (at a minimum) recklessly disregarded Synnott's well-established right to the sanctity of his home. Similarly, the

evidence supported a finding that, while improperly inside Synnott's home, they pointed weapons at him for no legally proper reason, knowing full well that they did not belong inside the home to begin with and that there was no basis to point a firearm at him. The jury was not required to believe the deputies' contrary versions of the events, as there was nothing inherently incredible about the testimony of Synnott or his sisters. Defendants' motion basically asks the Court to conclude that the jury erred. That, however, is not a proper basis for granting a new trial on manifest-weight grounds. Specifically, a district court "cannot grant a new trial just because it believes the jury got it wrong." *Whitehead v. Bond*, 680 F.3d 919, 928 (7th Cir. 2012). A new trial is not warranted on this basis.

**B.     Remittitur of punitive damages**

Burgermeister and Northrup next argue that the jury's punitive damages award was unconstitutionally excessive. The Due Process Clause of the Fourteenth Amendment imposes limits upon a jury's award of punitive damages. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). The Supreme Court has laid out three guideposts for courts to consider when reviewing whether an award of punitive damages is unconstitutionally excessive: (1) the reprehensibility of the defendant's conduct; (2) the relationship between the amount of punitive damages award and the harm or potential harm suffered by the plaintiff; and (3) the difference between the punitive damages award and the civil penalties authorized or imposed in comparable cases. *BMW of N. Am., Inc., v. Gore*, 517 U.S. 559, 575 (1996).

    **1.     Reprehensibility**

The first *Gore* guidepost is the reprehensibility of the defendant's conduct, which

involves consideration of five factors:

> the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm*, 538 U.S. at 419. "The existence of any one factor may not always be enough to sustain a punitive damages award, but 'the absence of all of them renders any award suspect.'" *Saccameno v. U.S. Bank Nat'l Ass'n*, 943 F.3d 1071, 1086 (7th Cir. 2019) (quoting *State Farm*, 538 U.S. at 419); *see also Sommerfield v. Knasiak*, 967 F.3d 617, 623 (7th Cir. 2020) (discussing how *Gore* did not establish "a rigid hierarchy of reprehensibility").

The second and fifth factors are most relevant in this case. Put simply, Synnott presented evidence that the defendants acted with "reckless indifference" toward his Fourth Amendment rights. *See E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 839 (7th Cir. 2013) (explaining that "reckless indifference" satisfies the fifth reprehensibility factor). As discussed above, Synnott and his sister both testified that Northrup had his gun out and pointed it at him throughout much of the encounter. Moreover, Synnott's sister testified that the deputies evinced no concern for their well-being. Specifically, she testified that they asked no questions, such as whether the residents were okay or if anyone was hurt, that might have corroborated the deputies' contention that they entered the home to conduct a wellness check. The jury appropriately could find that the deputies' entrance and Northrup's use of excessive force were "completely unjustified" given the circumstances, thereby making their conduct reprehensible. *See Hendrickson v. Cooper*, 589 F.3d 887, 894 (7th Cir. 2009).

6

Burgermeister and Northrup argue that Synnott did not suffer any physical injury, such that the first factor and that ultimately the entire analysis weighs in their favor. To support this position, they point to the lack of compensatory damages, which suggests to them that there was no injury. The problem with this argument is twofold. First, none of the factors in the reprehensibility analysis is individually dispositive. *Saccameno*, 943 F.3d at 1086. So even if this Court credits defendants' position on the first factor, the second and fifth factors can still tilt the scale in favor of Synnott. Second, there is also the possibility that the jury "preferred to award a single sum under the punitive category rather than apportion between compensatory and punitive damages," which would undermine the contention that Synnott did not suffer any injury. *Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008, 1011 (7th Cir. 1998); *see also Payne v. Jones*, 711 F.3d 85, 102 n.15 (2d Cir. 2013) ("Juries will often award nominal compensatory damages together with a reasonable punitive award where the harm to the particular plaintiff is small but the defendant's conduct is egregious."); *Sommerfield v. City of Chicago*, No. 8 C 3025, 2018 WL 1565601, at *7 (N.D. Ill. Mar. 31, 2018) (discussing the potential of jurors awarding a single sum of damages in the punitive category). Either way, there is sufficient evidence to support a finding of reprehensibility.

2. Ratio

Burgermeister and Northrup next argue that the difference between Synnott's harm and the awarded punitive damages is "beyond significant." Defs.' Mot. for New Trial at 6. The second *Gore* guidepost examines the relationship between the punitive damages award and the harm suffered by the plaintiff, which most often is analyzed based on the ratio between compensatory and punitive damages awards. *State Farm*,

538 U.S. at 425. Typically, a single-digit award ratio is constitutional, but this ratio is "flexible," and "[h]igher ratios may be appropriate when there are only small damages." *Saccameno*, 943 F.3d at 1088. It is accordingly impossible "to draw a bright line marking the limits of a constitutionally acceptable punitive damages award." *Gore*, 517 U.S. at 585.

An initial challenge with this guidepost in a case where the jury did not award compensatory damages is that the ratio "is undefined, like any other division by zero." *U.S. ex rel. Pileco, Inc. v. Slurry Sys., Inc.*, 804 F.3d 889, 892 (7th Cir. 2015). Section 1983, however, permits punitive damages in the absence of an award of compensatory damages. *Erwin v. County of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir. 1989); *see also Calhoun v. DeTella*, 319 F.3d 936, 942 (7th Cir. 2003) ("[N]othing prevents an award of punitive damages for constitutional violations when compensatory damages are not available.").

In short, the ratio guidepost is ill-suited for a case like this where the comparative award is zero or nominal. To this point, the Seventh Circuit has explained that a ratio cap "makes sense only when the compensatory damages are large." *Lust v. Sealy, Inc.*, 383 F.3d 580, 591 (7th Cir. 2004). For example, capping a punitive damages award at $100 for a $10 compensatory damages award based on a standardized ratio maximum would undermine the purpose behind punitive damages. *Id.* Other circuits have recognized this point as well. *See Jester v. Hutt*, 937 F.3d 233, 242 (3d Cir. 2019); *Bryant v. Jeffrey Sand Co.*, 919 F.3d 520, 528 (8th Cir. 2019); *Arizona v. ASARCO LLC*, 773 F.3d 1050, 1058 (9th Cir. 2014); *Payne*, 711 F.3d at 102; *Saunders v. Branch Banking & Tr. Co. of Va.*, 526 F.3d 142, 154 (4th Cir. 2008); *Romanski v.*

8

*Detroit Entm't, L.L.C.*, 428 F.3d 629, 645 (6th Cir. 2005); *Williams v. Kaufman County*, 352 F.3d 994, 1016 (5th Cir. 2003). At bottom, "ratios are not 'the be-all and end-all in punitive-damages analysis,'" but instead are just one guidepost to consider in assessing the constitutionality of a punitive damages award. *Sommerfield*, 967 F.3d at 624 (quoting *Shea v. Galaxie Lumber & Constr. Co.*, 152 F.3d 729, 736 (7th Cir. 1998)).

Turning to the present case, and in light of the considerations just discussed, the Court does not find problematic the jury's award of punitive damages without an award of compensatory damages. Aside from actual harm, the potential harm was substantial: the deputies allegedly entered Synnott's home uninvited and one of them pointed his gun at the home's residents, resulting in a finding of excessive force. *See Gore*, 517 U.S. at 582 (explaining that the ratio guidepost "compares actual *and potential damages* to the punitive award").

### 3. Comparable penalties

The third *Gore* guidepost asks the Court to compare the punitive damages awarded to Synnott with "the civil penalties authorized or imposed in comparable cases." *State Farm*, 538 U.S. at 428. This guidepost is intended in part to provide "fair notice" that a defendant's conduct could merit the punitive award and considers "whether less drastic remedies could be expected" to deter future misconduct. *Gore*, 517 U.S. at 584. On a broader level, however, as the undersigned judge has previously discussed, "any attempt to compare damages across different cases is 'inherently problematic.'" *Cooper v. City of Chicago*, No. 16 C 3519, 2018 WL 3970141, at *8 (N.D. Ill. Aug. 20, 2018) (quoting *Deloughery v. City of Chicago*, No. 02 C 2722, 2004 WL 1125897, at *5 (N.D. Ill. May 20, 2004)). This difficulty is particularly acute in section

9

1983 claims because of their "fact-specific nature," which "results in a dearth of apples-to-apples comparisons." *Hardy v. City of Milwaukee*, 88 F. Supp. 3d 852, 883 (E.D. Wis. 2015). Unsurprisingly, few reported cases feature facts exactly like this one, where law enforcement unlawfully entered the plaintiff's home and one officer used excessive force.

Both parties cherry-pick cases to support their respective positions, though only one case similarly features punitive damages stemming from both unlawful entry and excessive force. In *Cooper*, which was tried before the undersigned judge, the plaintiff prevailed in a jury trial on his claims for unlawful entry, false arrest, excessive force, and malicious prosecution after police officers entered his home based on a noise dispute with his landlord. 2018 WL 3970141, at *1. The jury awarded $125,800 in compensatory damages, and a total of $425,000 in punitive damages, which was divided among the five defendant police officers in amounts ranging from $50,000 to $100,000. *Id.* The court denied the defendants' motion to amend the award after considering the *Gore* factors. *Id.* at *9.

Two additional cases from other circuits provide helpful comparisons. *See Deloughery*, 2004 WL 1125897, at *6 ("[T]here is no hint in the Seventh Circuit's jurisprudence that comparability has a geographic component."). In *Frunz v. City of Tacoma*, 468 F.3d 1141 (9th Cir. 2006), the plaintiff prevailed in a jury trial on her section 1983 claims for unlawful entry and excessive force when police entered the plaintiff's home without a warrant or announcing themselves and handcuffed the plaintiff because she did not have ID or paperwork showing she owned the home. *Id.* at 1142–44. The jury awarded $27,000 in compensatory damages and $111,000 in punitive

damages against three officers, which was upheld on appeal. *Id.* at 1144. And in *Gregg v. Ham*, 678 F.3d 333 (4th Cir. 2012), a jury awarded the plaintiff nominal damages and $30,000 in punitive damages on her unlawful entry claim against a bail bondsman. *Id.* at 338. The district court declined a request for remittitur. *Id.* at 344.

Considered altogether, these cases indicate that the jury's punitive damages awards against Burgermeister and Synnott align with comparable cases. The punitive damages awarded against Northrup are in line with both *Cooper* and *Frunz*, and the punitive damages awarded against Burgermeister are less than the amount in *Gregg*. Additionally, the Court finds it noteworthy that in this case, a second and entirely new jury awarded roughly the same punitive damages as the first jury: the punitive damages awarded against Burgermeister decreased from $30,000 to $10,000, and the punitive damages awarded against Northrup increased from $70,000 to $75,000. Proper respect for the Seventh Amendment's preservation of the right to submit civil disputes to citizen juries would make it incongruous to displace the findings of two, independent juries in the present circumstances. *Deloughery*, 2004 WL 1125897, at *5.

\*\*\*

In sum, the jury could appropriately find that the defendants' conduct was reprehensible, the ratio of punitive to compensatory damages is permissible, and the amount of punitive damages awarded is consistent with other decisions involving comparable conduct. Having considered the *Gore* guideposts, the Court concludes that the punitive damages awarded in this case are not unconstitutionally excessive.

### C. Punitive damages basis

In their third claim, Burgermeister and Northrup argue the punitive damages

award has no rational connection to the evidence. But weighing an award's rational connection to the evidence is a relevant consideration for reviewing an award of compensatory damages, not punitive damages. See *AutoZone, Inc.*, 707 F.3d at 833.

Finally, the defendants raise the specter of juror bias, passion, or prejudice. They describe Synnott's closing argument as "designed to exploit" the jurors because it "referenced the need for police reform" at a time when police reform was at the forefront of the news following the murder of George Floyd. Defs.' Mot. for New Trial at 10. This argument is frivolous. This case was tried in April 2021, over ten months after Floyd's murder. Synnott made no reference to any specific events, and nothing about the facts of this case would have invoked memories of those much earlier, unfortunate events. The jury was expressly instructed to consider only the evidence presented, and it is presumed to have followed that instruction. *United States v. El-Bey*, 873 F.3d 1015, 1022 (7th Cir. 2017). Were the Court to accept this argument, it would provide a basis to nullify virtually any jury verdict against a police officer no matter when rendered, given the frequency of public reporting of apparent police misconduct. Defendants' argument lacks merit.

The defendants' sole cited authority in support of this contention does not change the calculus either. The defendants suggest that "the extreme amount of an award compared to the actual damage inflicted can be some evidence of bias or prejudice in an appropriate case." *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 42 (1991) (Kennedy, J., concurring). The quoted language, however, comes from a non-controlling concurring opinion. That aside, the punitive damages awards in this case cannot rationally be characterized as extreme. And regardless, the Court's decision in

*State Farm* is now the touchstone for assessing the constitutionality of punitive damages, not *Pacific Mutual*. See *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 501 (2008).

## Conclusion

For the reasons stated above, the Court denies Burgermeister and Northrup's motion for new trial [dkt. no. 253].[1]

_____
MATTHEW F. KENNELLY
United States District Judge

Date: December 23, 2021

---

[1] The Court notes that Synnott, who is proceeding *pro se*, will now be able to appeal from the Court's decision vacating the verdict rendered by the jury in the first trial and granting the defendants' motion for a new trial.

13